## STEVENS vs. CHOUTEAU.

An execution issued by a justice of the peace, and not returnable according to law, is not merely erroneous, but is void.

### ERROR from St. Louis Court of Common Pleas.

### *Statement of the Case.*

This is an action of trespass *de bonis asportatis,* brought in the St. Louis Court of Common Pleas, by defendant in error against plaintiff in error, for the value of a horse. The plaintiff obtained judgment in the court below, and the defendant has brought the case by writ of error to this Court.

The horse was taken by the deputy of the defendant, Stevens, who was at the time constable of St. Louis township, by virtue of two executions issued by Benj. F. McKinney, a justice of the peace, on a judgment in favor of one Richard T. Hanson against one Thomas J. Adams, as the property of the defendant in the executions. The executions both bore date the 5th June, 1845, and were both received by the constable (the defendant) on the same day, and were each for

$123 76 debt, and $1 06 costs; and they were both levied on the horse in question (with other property) on the 6th June, 1845, in the evening. On the 5th June, when the executions came into the hands of the defendant, as constable, the horse belonged to Adams, the defendant in the executions. On the morning of the 6th, and before the levy, Adams traded and delivered the horse to the plaintiff, Chouteau, for value. When the executions came into the hands of the defendant as constable, they were both of them returnable in sixty days, but this was not discovered until the morning after the levy was made. 'I hereupon, the deputy, who made the levy, took the executions back to the justice who issued them, who altered them by striking out sixty days writing ninety days in lieu thereof. And under the executions thus *altered,* the horse was advertised and sold by the defendant, Stevens. There was no evidence that Chouteau, when he bought the horse from Adams, had any knowledge or notice of the existence of the executions.

## POLK, *for Plaintiff in error.*

1. The question in this case is, whether the executions upon which the horse sued for by Chouteau was seized, were *void upon their faces,* or were merely voidable.

If the executions were not *void* upon the very faces of them, but were merely *voidable,* then it was the duty of the defendant, as constable, to levy them, and they constituted a full defence and justification to him in this action. Wilson vs. Huston, 4 Bibb, 332; Davis vs. Wood, 7 Mo. R., 162; Milburn vs. Ray, 11 Mo. R.

2. I maintain that the executions under which Stevens acted as constable, were not *void upon their faces,* but merely *voidable.*

The statute in force on the subject at the time these executions were issued, (Acts 1840-1, p. 101) required executions issued by justices of the peace to be made returnable " within ninety days from date." These executions were made returnable "in sixty days." The only error or defect in the writs lies in the time of their return. In every other respect, they were regular and in due form. It will be observed that the executions have not a *longer* time to run than they were allowed by the law to have, but only that they are returnable at an *earlier* day than by statute they might have been made returnable; but still they are within ninety days, and consequently within the time fixed by the statute.

I maintain, therefore, that the executions were not in irreconcilable violation of the statute; and therefore *not on the faces of them void*—but within and covered by the statute, inasmuch as their return day was within the period limited by the statute, and therefore *voidable* merely.

3. If these executions had been issued by a clerk of a court of record of general jurisdiction, there could not be a question or a doubt but that they would have been *voidable* merely, and not *void.* This is the very point of the decision, as I understand it, in the case of Wilson vs. Huston, 4 Bibb, 332, and Milburn vs. Ray, 11 Mo. R. In the two cases just quoted, the sheriff was held liable for not executing the writs.

4. Can it make any difference that they were issued by a justice of the peace? I can see no principle that could make a difference. And so I understand this Court to have decided in the case of Davis vs. Wood, 7 Mo. R., 162, in which case the writ did not run in the name of the State, and the court held that, "notwithstanding the error, it was a justification." But this case is precisely parallel to the case at bar. It was an action of trespass against a constable for seizing property on an execution issued by a justice of the peace, and the court held that the writ, though it did not run in the name of the State, and did not conform to the requisition of the statute, was notwithstanding a justification to the officer.

Again, an execution issuing from a court of record is as much regulated by statute—as much prescribed as to form and time of return, as are executions issued by a justice of the peace.— Then why should there be any difference between them in this respect? One would rather think that, if there could be any propriety in taking a distinction at all, it ought to be so taken as to be

*Stevens* vs. *Chouteau.*

favorable to the proceedings of a justice of the peace, as being an unlearned and unskillful officer, rather than to those of a court of record, which is generally presided over by Judges of learning and experience.

SPALDING, *for Defendant in error.*

1. The executions on which Stevens, plaintiff in error, levied on the horse of the plaintiff, were void and no justification for defendant below, and the instructions were right. 5 Wend., 275; 9 Wend., 338; 19 J. R., 40; 14 Ver. Rep., 491; 11 Ver. R., 195; 16 Ver. R., 393; 1 Wash. R., 393; 4 Bibb, 332; Milburn vs. Ray, 11 Mo. R.

An execution from a justice of the peace, returnable in sixty instead of ninety days, for more than $50, is void. Acts of Assembly of 1840-1, p. 101, ("Act to amend an act entitled 'an act to establish justices' courts,' &c, passed 21st March, 1835,") sec. 3, fixes the time of return of executions. R. C. 1845, p. 661, sec. 3 and 4.

Sanders vs. Rains, et al, 10 Mo. R. The summons was held void, returnable in too short a time.

The amendment of the execution by the justice did not avail to legalize the levy, because, 1st, it was not competent for him to make it, at least after the execution had been acted on; and, 2nd, because, if the justice could amend, it came too late, as the property was no longer subject to an execution against the defendant therein, at that time.

2. The court rightly admitted the testimony of Clark, the deputy or agent of the defendant.— His proof was confined to the fact that he had been deputy of defendant at the time of the transaction. He had no interest in that matter in favor of the plaintiff below; and he had no interest in the event of the suit in favor of the plaintiff, as, if he had done wrong, he was answerable to the defendant, unless he had done so by the defendant's orders.

The incumbency of an office can be proved by parol: besides, the point was not properly taken to the admission of his testimony. The bill of exceptions shows merely that his proof of his own acting in the capacity of deputy was objected to and the objection overruled, but no exception was taken to that decision. 5 Litt., 105, 107 and 108 ; 3 Carr & Payne, 344; (14 E. C. L., 339.)

3. The giving of the instructions was not excepted to.

4. The motion for new trial ought not to have been sustained. It raised no new points, but endeavors to supply the place of exceptions to the admission of Clark's testimony, and to the giving of the instructions, which matters were not excepted to before.

NAPTON, J., *delivered the opinion of the Court.*

The only question in this case is, whether an execution issued by a justice of the peace, returnable in sixty days, instead of ninety days, will justify the officer who levies it. Is the execution merely erroneous or absolutely void on its face?

There can be no doubt that a writ issuing from the Circuit Court, returnable out of term, is only erroneous, and not void. State, use of Ray, vs. Milburn, 11 Mo. R. A distinction has however been recognized by those courts which have decided this principle, between executions issuing from courts of limited and inferior jurisdiction and those ema-

nating from courts of record of general jurisdiction. Upon reflection, we think there is sound policy in the distinction. A justice has no power over writs after they have issued; the power of amendment is not given by the statute, and from the statute alone he derives his authority. He has no common law or general jurisdiction. On the other hand, the Circuit Courts are invested with a full control over all process emanating by their direction or from the office of their clerks, and this power can always be exercised in time to prevent any irremediable injury arising from mistakes or abuse of its process by its officers. But the jurisdiction given by the statute to justices is not only limited, but summary.— From the long intervals occurring between the sittings of the superior courts, it would be difficult, and, in some cases, impracticable, to correct by appeals, writs of prohibition and other modes prescribed by law, the mischiefs that would result from the execution of illegal process emanating from justices' courts. If the process be held merely erroneous, and not void, property may be sacrificed and the owner be without substantial redress. Hence, it is believed to be sound policy to adhere to the decisions of other States on this subject, and require the process which emanates from these inferior courts to conform substantially to the requisites of the statute. Toof vs. Bentley, 5 Wend., 276; 9 Wend., 388; 16 Verm. R., 393.

The other Judges concurring, the judgment is affirmed.