HUGH LACKEY, Plaintiff in Error, v. J. C. LUBKE, Defendant in Error.

*Execution—Sheriff's Deed.*—The deed made by the sheriff, upon a sale of land under execution, must show that the sheriff acted under a writ that was in force at the time he made the sale. When the sheriff endorsed upon an execution issued June 12, 1854, and returnable the first Monday of August, 1854, a levy made June 16, 1854, and then under the same writ made a sale on the 29th November, 1854; *held,* that no title passed by the deed. The endorsement of a levy upon the writ will not continue the execution in force, so that a sale can be made without a *venditioni exponas.* (R. C. 1855, p. 748, § 54.)

Lackey v. Lubke.

*Error to Crawford Circuit Court.*

*Ewing & Muir*, for plaintiff in error.

I. The continuance should have been granted. The application and affidavit in support of it shows reasonable diligence, especially when the condition of the country is considered.

II. The depositions of Klunk and Hunt were improperly excluded.

III. The sheriff's deed was improperly excluded. (Act on Execut. §§ 49–54, R. C. 1845, pp. 484–5; Hardy v. Heard et al., 15 Ark. 185–7 ; Rev. Stat. Ark., p. 382, § 54.) It contained all the recitals required by law. In Tanner v. Stine (18 Mo. 580), cited by defendant's counsel, the deed omitted a recital of the court, the term, and the year. The recital in the deed in the case at bar, as to the notice (which is the only supposed defect noticed by the opposite counsel), is full. The statement in the deed that he, the sheriff, gave twenty days' notice, &c., by handbills, *ex vi termini* import that he signed the handbills.

The deed being evidence of the facts therein recited, plaintiff was not bound to show otherwise a judgment, execution, advertisement, &c., and it should have been admitted. Any question, therefore, as to the regularity of the issue, return, &c., of the execution before the deed was admitted, defendants were precluded from raising in the court below, and cannot do so here.

IV. It is unnecessary, in this view, for the plaintiff in error to show any authority for issuing an execution from the Law Commissioner's Court to the sheriff of Jefferson county. The statute, however, gives express authority for it —R. C. 1845, Execut., p. 476, § 8 ; R. C. 1855, p. 737, § 8— and there is no repugnancy between these provisions and that provision of the act creating the Law Commissioner's Court directing that its process shall be executed by the sheriff or marshal ; which only means (construing the two acts together) that the process to be executed in St. Louis county shall be executed by the sheriff or marshal.

V. It is further maintained—though not necessary as the case is now presented, as we conceive—that the supposed irregularities and errors, if they really existed, are not such as could have availed the defendants, in a collateral proceeding of this kind, for any purpose. (Landes v. Perkins, 12 Mo. 238; Draper v. Bryson, 17 Mo. 71; Reed v. Austin, 9 Mo. 713; 16 Mo. 68.)

VI. The fact that depositions offered in evidence may contain incompetent and illegal evidence, will not justify the rejection of them altogether. The court should point out and exclude the inadmissible portions. (Hamilton v. Scull, 25 Mo. 165.)

A motion to exclude depositions must specify the grounds of objection. (Chapman v. Sprier, 10 Mo. 689; Bank Mo. v. Merchants' Bank, 10 Mo. 123; 15 Mo. 244; 13 Mo. 203.)

*I. Z. Smith*, for defendant in error.

An execution from the Law Commissioner's Court has no validity if issued to Jefferson county. The Laws of 1853, p. 95, provide that "all process issuing from the Law Commissioner's Court shall be directed to the marshal of St. Louis county, and executed and returned by him."

The court is limited in its jurisdiction as to amount, and the execution of "all" its process is limited to one officer of one county. Its jurisdiction on notes is just the same as that of justices of the peace; and on accounts, a little higher; and it was the intention of the Legislature to confine the operation of its process to the same territorial extent as those issuing from justices of the peace.

This court being one of limited and not general jurisdiction, all acts concerning its jurisdiction, and concerning the execution of its process, must be construed strictly. The Legislature, in creating this tribunal and in defining its powers, did not intend to give it any power beyond the bounds of the county.

The several acts establishing the St. Louis Court of Common Pleas (R. C. 1855, p. 1587), the St. Louis Criminal

Court (*id*. p. 1589), and the St. Louis Land Court (*id*. p. 1592), contain no such language.

But supposing there had been a valid judgment, and the court could have given power to the sheriff of Jefferson county to execute the execution or process, the execution in this case would have had no vitality. The Laws of 1853, pp. 94 & 95, provide that this court shall have six terms a year— April, June, August, October, December, and February.

The general law provides that executions shall be made returnable to the next succeeding term, unless otherwise ordered by the plaintiff, when they be made returnable to the second term. The execution offered in evidence by plaintiff was issued June 12, 1854, and made returnable on the first Monday of August, 1854. After the first Monday of August, 1854, this execution, if it ever had any validity at all, was dead; after the first Monday of October it was undoubtedly dead, without a *venditioni exponas*, which should be recited in the deed. If the general law concerning executions is correctly applied to executions issuing from the Law Commissioner's Court, then there was no validity to the execution in question after the first Monday of August, 1854.

But another reason may be urged against the validity of the execution. The law of 1851 (p. 243) provides that all executions issuing out of the Law Commissioner's Court shall be dated the day they are issued, and returnable in sixty days. This law has never been repealed. It was a special law, applied to a single object, and cannot be repealed by any general law, unless by express terms. This execution issued on the 12th day of June, and should have been returnable on the 11th day of August. Now, if the first Monday of August was the 7th day of the month, it would make 56 days; if the 1st of the month, it would be 50 days. It was therefore not in accordance with the law, and therefore had no effect.

Plaintiff also complains that the sheriff's deed to him was excluded; but there are good reasons for its exclusion :

I. All of the reasons for the exclusion of the execution and return are reasons for excluding the deed. The deed was based upon the execution; if that was worthless, the deed must be.

II. Admitting, 1st, that there was a judgment; 2d, that the court could issue its process to Jefferson county; 3d, that the execution was made returnable at the proper time; and, 4th, that it had validity and life after the return day—then it carried no title, for the reason that it is defective in its recitals.

The Laws of 1845 (R. C. 1845, p. 484) provide for the recitals in a sheriff's deed, and (p. 483) what the advertisement shall contain.

Lovelace, Judge, delivered the opinion of the court.

When this case was called for trial, the plaintiff filed an affidavit asking for a continuance on the ground of the absence of material witnesses and on account of the absence of counsel; he gives the names of the witnesses and their place of residence, showing that they reside over forty miles from the place of trial, and sets out what he expects to prove by the witnesses, and that he has made some exertion to get their depositions; that he had given notice to take their depositions on the 17th day of April, (the trial came on the 24th,) and that he had notified the witnesses to appear at the time and place designated in the notice, and that the witnesses failed to appear; that he believed he could procure the evidence by the next term of the court, if the continuance were granted. The court overruled the motion for a continuance and the defendant excepted, and the trial proceeded, and the plaintiff offered certain evidence (which will be more fully alluded to hereafter), which was excluded by the court, and the plaintiff took a non-suit with leave to move to set the same aside.

The plaintiff then filed a motion to set aside the non-suit, for the reasons the court refused to grant a continuance, and had improperly excluded evidence offered by the plain-

tiff; and his motion to set aside the non-suit being over-ruled, he excepted, and now brings the case here by writ of error.

There was no error in refusing the motion for a continu-ance; such motions are very much within the discretion of the *nisi prius* courts; they understand the facts much bet-ter than they can be understood here. Besides, the record shows that this suit was commenced in 1857, and was not disposed of until April, 1863; it had been continued several times at the application of the plaintiff, and no good reason is shown why the depositions of these witnesses were not taken sooner. After the application for a continuance was overruled, the trial proceeded.

To show the plaintiff's right to maintain the action and have the defendant's deeds set aside, he offered in evidence an execution issued by the Law Commissioner of St. Louis, dated the 12th day of June, 1854, and directed to the sheriff of the county of Jefferson, reciting that Hugh Lackey, on the 21st day of April, in the year of our Lord one thousand eight hundred and fifty-three, at the Law Commissioner's Court of St. Louis county, recovered against John Schrieber the sum of one hundred and sixty-three dollars and fifty cents for his debt, together with forty-one dollars and forty-five cents for his costs and charges in said suit expended; and commanding the officer, that of the goods, chattels and real estate of the said John Schrieber he cause to be made the said debt and costs, and that he have the said writ before the Law Commissioner's Court on the first Monday of August then next following: upon which execution is endorsed a levy on the 16th of June, 1854, of the real estate in contro-versy, and also a return of the sale to the plaintiff on the 29th day of November, 1854. And the plaintiff offered in evidence a sheriff's deed from the sheriff of Jefferson county to Hugh Lackey, the plaintiff: the deed contains the same recitals as the execution; it also recites the levy, the adver-tisement—that he gave at least twenty days' notice of the time, terms and place of sale, and of the real estate to be

sold, as the law directs, by six handbills put up in public places in different parts of Jefferson county; it then states how the land was sold, and that it was purchased by Hugh Lackey, and contains the ordinary terms of conveyance by the sheriff to Lackey. The introduction of this deed and execution was objected to by the defendant, and the objection sustained by the court, to which ruling the plaintiff at the time excepted.

The plaintiff also offered in evidence two depositions, which were objected to by defendant, and the objection sustained by the court, to which the plaintiff excepted. The objection to the deed and execution being the same, they will be considered together.

The well established rule is, that a sheriff's deed must contain recitals which are required by the statute, (Tanner v. Stine, 18 Mo. 580,) and that he made it in accordance with law ; that is, the deed must show that the sheriff acted under a writ that was in force at the time he made the sale. In this case the execution was issued by the Law Commissioner of St. Louis, and dated the 12th day of June, 1854, and returnable on the first Monday in August, 1854 ; and the land was not sold until the 29th November. The rule on this subject is, that a writ must be returned according to its tenor, unless the statute will authorize the officer to hold it up and execute it after the return day. On this subject the statute has been referred to—R. C. 1855, p. 748, § 54 : that section provides, " that in all cases where an execution shall be issued and levied by the proper officer upon real estate, and, for any cause, a sale of such real estate, without the fault of the officer, cannot be made at the first term of the court of the county in which such sale is to be made, the execution shall continue in force until the end of the second term of the court of the county to which such writ is directed, and the officer shall in all such cases proceed to advertise and sell the real estate according to law."

This section evidently goes upon the idea that the execution would be in force at the first term, and then if, without

any fault of the officer, no sale is made, the execution is con-
tinued in force to the next term. This construction is also
borne out by the 5th section of the same act, which provides
that "executions issuing from any court of record shall be
made returnable at the next succeeding term thereof, unless
the plaintiff, or person to whose use the suit was brought,
shall direct otherwise; then it shall be the duty of the clerk
issuing the same to make it returnable to the second suc-
ceeding term thereof." If the mere endorsement of a levy
on the back of an execution would keep it alive, this section
would be unnecessary; for the sheriff could endorse the levy
on the back of the execution on the same day it is issued.
But what effect has a levy on real estate, or, in other words,
the mere endorsement on the execution, that the sheriff has
levied it on certain real estate? It is not felt by the defend-
ant—it is, perhaps, not even known by him—until the land
is advertised for sale; and it has not unfrequently been held,
that no levy need be endorsed on the execution at all. But
in personal property it is different; the levy is the taking of
the property into actual possession by the officer. The mere
endorsement of the sheriff, that he has levied the execution
on real estate, could hardly continue the execution in force
until the property could be sold without a *venditioni exponas*.

The whole theory upon which the 54th section is based, is
that the execution will be in full force at the first term of the
court, and then if, without any fault of the officer, it is not
sold, the execution will be continued in force until the next
term; but, by examining the different acts in relation to
the Law Commissioner's Court of St. Louis, it will be seen
that this execution had run for a greater time than that al-
lowed for two executions before any sale was attempted. In
1851 (Sess. Acts 1851, p. 241, § 1) the Law Commissioner's
Court of St. Louis county is declared to be a court of record,
and by the 10th section of the same act (p. 243) it is pro-
vided, that any execution issued by said Commissioner's
Court shall be dated on the day it is issued, and shall be
returnable in sixty days from its date. At this time, the

Law Commissioner's Court was declared to be in session during the whole year, Sundays excepted; but in 1853 (Sess. Acts 1853, pp. 94–5) it is enacted, that there shall be six terms of the Law Commissioner's Court held in each year in the city of St. Louis, commencing on the first Mondays in April, June, August, October, December, and February.

Now, it is only by construction of this last statute that executions issued from the Law Commissioner's Court are made returnable at the next term of the court, instead of within sixty days, according to the act of 1851; and if the act of 1851 were still in force, this execution would be absolutely void upon its face. (Stevens v. Chouteau, 11 Mo. 382.) But courts of record are required to make their writs returnable in term time, and under this general provision it is insisted that the Law Commissioner's Court, after it was made a court of record and regular terms established, should make its writs returnable like other courts. But it is a court of very limited jurisdiction, and the fact that its terms follow each other in such quick succession shows that its jurisdiction was intended chiefly to be confined to the city and county of St. Louis; and if parties see proper to carry its writs to other counties, it is no great hardship on them to require them to take the necessary steps to keep the writs alive by *venditioni exponas* until they are fully executed.

The execution, then, in our opinion, issued on the 12th day of June and returnable on the first Monday of August, could give the sheriff no power to sell on the 29th day of November; so that the recitals in the deed, instead of showing that the sheriff had power to make the sale, show that he had no power whatever, and this the purchaser was bound to know at his peril. It is not like a defect in a judgment, for in that case the sheriff, if the execution is regular, has authority to make the sale even though the judgment may be so defective as to be void; and the purchaser will acquire a good title, because he is not bound to look back to the judgment; but it is no hardship to require him to see that the

sheriff is acting under a good and valid writ, issued by a court of competent jurisdiction.

It would hardly be contended, if a sheriff should sell a piece of land under an execution issued by a justice of the peace, that thereby passes any title, or if he should sell without any writ at all ; and there is no difference in selling without a writ and selling under a writ after it has ceased to have any force, as was the case at bar. And if the recitals in the deed fail to show the authority under which the sheriff acted, or if, as in this case, the recitals show that he acted without authority, then the deed ought not to be read in evidence.

The case of Hardy v. Heard et al. (15 Ark. 185) only shows what the recitals in a sheriff's deed prove when introduced. The objection in that case was, that the plaintiff had failed to support the sheriff's deed by introducing the judgment and execution. The statute of Arkansas in relation to sheriff's deeds is an exact copy of our own (Stat. Ark., p. 382, § 54), and in Hardy v. Heard the court say, after alluding to the recitals in the deed then before them, " a deed not containing the recitals mentioned in the statute, or not showing on its face a compliance with the law, could not be evidence under the statute"; and in the case at bar the recitals fail to show the great object for which they were intended—the power of the sheriff to pass the title from Schrieber to Lackey. We can see no error in excluding the deed.

The deed being rightfully excluded, the depositions become a matter of no importance. Without the deed the plaintiff had no standing in court, and excluding the depositions, whether rightfully or wrongfully, did him no harm, and it therefore becomes unnecessary to investigate them. Upon examination of the depositions, however, we have failed to find any material evidence in them. The plaintiff was rightfully out of court for one good reason, and that was enough.

The other judges concurring, the judgment is affirmed.