THOMPSON, *Appellant*, v. THE CHICAGO, SANTA FE & CALIFORNIA RAILWAY COMPANY.

Division Two, May 23, 1892.

1. **Condemnation Proceeding**: RAILROAD: SERVICE OF COPY OF PETITION: COLLATERAL ATTACK. The failure to serve a copy of the petition on the land-owner in a condemnation proceeding (a copy of the summons and notice of the commissioners' report having been served) does not render the judgment void, and, therefore, subject to collateral attack.

2. ———: ———: JURISDICTION. The fact that the petition was heard at a later day than the one named in the notice does not oust the court of jurisdiction where the owner did not appear in court on the day named in the notice.

Thompson v. The Chicago, S. F. & C. Ry. Co.

3. ——: DEFECT OF PARTIES DEFENDANT: COLLATERAL ATTACK. Condemnation proceedings are not subject to collateral attack for misjoinder of parties defendant, or for the omission to recite in the order appointing commissioners that they were disinterested, since these matters are not jurisdictional.

4. ——: JUDGMENT RECITALS: NAMES OF LAND-OWNERS. Where a judgment in condemnation proceedings specifically refers to and confirms the report of the commissioners, it is not necessary for the judgment to recite the names of the land-owners who are mentioned in the report.

5. ——: LAND SUBJECT TO MORTGAGE: DAMAGES. It is proper upon condemnation of mortgaged land to award the owner of the equity of redemption the full value of the land, since the damages awarded stand in the place of the land, and can be subjected to payment of the mortgage.

*Appeal from Carroll Circuit Court.*—Hon. J. M. Davis, Judge.

AFFIRMED.

*J. T. Montgomery* for appellant.

(1) The circuit judge had no jurisdiction to appoint commissioners in either cause. *First.* Notice to a non-resident of the county in which a petition for the condemnation of private property is pending is insufficient unless such notice contains a description of the property sought to be taken. *Second.* A writ without the copy of the petition is not sufficient. R. S. 1879, secs. 3489, 3493; *Railroad v. Taylor*, 43 Mo. 35. (2) Where non-residents and residents of the county and judicial circuit in which the property sought to be taken is situated are joined and united in the same petition, the rights of the non-residents are not affected or divested thereby. *Railroad v. Kellogg*, 54 Mo. 335; *Railroad v. Carter*, 85 Mo. 448. (3) The petition for the condemnation of lots 18 and 19 should have been heard on the day named in the writ, the fifteenth day of

June, and not on the first day of July, as the record of the proceedings discloses. (4) The record and proceedings to take private property for public use must show, in order to give the court jurisdiction of the subject-matter of the action, that the commissioners appointed to assess the damages were disinterested. R. S. 1879, sec. 894; *State ex rel. v. St. Louis*, 1 Mo. App. 503; *Springfield v. Whitlock*, 34 Mo. App. 642; *Judson v. Bridgeport*, 25 N. J. L. 309. (5) Before a railroad company can appropriate land for its roadbed and depot grounds there must be a judgment of record vesting them with that right. The record and proceedings under consideration show no such judgment. (6) The declarations of law asked by the plaintiff should have been given. "In proceedings of this nature in derogation of common law and right, the utmost strictness is required in order to give it validity; unless it appear on the face of the proceedings that every essential prerequisite of the statute has been fully complied with, every step will be *coram non judice.*"

*Gardiner Lathrop*, *T. J. Whiteman* and *S. W. Moore* for respondent.

(1) The petition in the condemnation proceedings stated all the necessary jurisdictional facts; personal service was had on J. C. Thompson and H. Lamm, his trustee, and, therefore, the court had jurisdiction to appoint commissioners and proceed with the case. *Quayle v. Railroad*, 63 Mo. 471. (2) The court having jurisdiction of the subject-matter and of the person of the defendant Thompson, its judgment cannot be assailed for mere errors or irregularity in this collateral proceeding. 1 Black on Judgments, sec. 261; *Perryman v. State*, 8 Mo. 208; *State v. St. Germans*, 31 Mo. 230; *Railroad v. Railroad*, 94 Mo. 535; *Kane v.*

*McCown*, 55 Mo. 181; *Secombe v. Railroad*, 23 Wall. 108; *Sedalia v. Railroad*, 17 Mo. App. 105; *Evans v. Haefner*, 29 Mo. 141. (3) The omission of the order appointing commissioners to recite that they are "disinterested" freeholders is not a jurisdictional defect. Their qualification is a matter of proof, to be passed upon and determined by the court, and cannot be inquired into in a collateral proceeding. *Quayle v. Railroad*, 63 Mo. 465; *Kellog v. Price*, 42 Ind. 360; *Brown v. McCord*, 20 Ind. 270; *Appeal of Rood*, 17 Serg. *missioners v. Espen*, 12 Kan. 531; *Huling v. Kaw & R.* 388; *Railroad v. Morton*, 27 Mo. 317, 321; *Com-Valley Co.*, 130 U. S. 559. (4) The presumption is that they were disinterested. *Appeal of Rood*, 17 Serg. & R. 388. (5) The court had the power to send its summons to plaintiff Thompson in Pettis county. He could refuse to be joined in the same suit with his codefendant, if he had desired,—it was a personal privilege which he could waive or avail himself of. *Railroad v. Lumber Co.*, 37 Fed. Rep. 3; *Cooley v. McArthur*, 35 Fed. Rep. 372; *Purcell v. British L. & M. Co.*, 42 Fed. Rep. 465; *Zambrino v. Railroad*, 38 Fed. Rep. 449. (6) While the time named in the notice to Thompson of the day on which the petition for condemnation would be heard was June 15, it was competent for the court to continue the matter, for want of service, until July 1, and to appoint commissioners on that day. *Railroad v. Kellogg*, 54 Mo. 334. (7) A judgment is not necessary in condemnation proceeding. The report of the commissioners, approved by the court, is the company's "muniment of title." *Railroad v. Carter*, 85 Mo. 451; *Railroad v. Story*, 96 Mo. 611, 621. (8) The law does not require that the notice to be served on a resident land-owner shall contain a description of the property sought to be appropriated, or that it shall be accompanied by a copy of the petition. A notice in the

"form of a summons" is all that is required. *Cory v. Railroad*, 100 Mo. 282. (9) The motion and affidavit served on plaintiff Thompson, requiring him to set up his claim to the condemnation money, and the judgment rendered by the court thereon, constitute a bar to this action.

THOMAS, J.—In 1887, plaintiff was holder of a note for $1,400 secured by deed of trust on lots 17, 18 and 19, block 6, in the town of Norborne, Carroll county, Missouri, B. F. Sanders being the owner of the equity of redemption in lot 17, and Jennette Duggan and husband in lots 18 and 19.

On the second day of June, 1887, the defendant's grantor, a railway company, instituted condemnation proceedings in the circuit court of Carroll county to acquire the title to said lot 17 for a right of way and depot grounds, making plaintiff, B. F. Sanders, and H. Lamm parties, the latter being the trustee in said deed of trust. Owners of other lots in said town were also joined as defendants. Plaintiff and Lamm then resided in Pettis county, and the other defendants in Carroll county.

The judge of the circuit court in chambers ordered that defendants be notified, and accordingly the clerk of the circuit court of Carroll county issued two writs of summons directed to the sheriffs of said Carroll and Pettis counties, directing that they summon said parties "to appear before the judge of the circuit court of Carroll county, at the law office of John E. Wait, in the city of Chillicothe, Livingston county, on the seventeenth day of June, 1887, at the hour of one o'clock P. M., then and there to answer unto the petition of the Chicago, Santa Fe & California Railway Company of Iowa, and which petition will then and there be heard." The parties were duly served with copies of

the summons more than ten days prior to the day set for the hearing. No one appeared, and the judge appointed commissioners, who afterwards filed their report in said circuit court assessing the damage at $500. Plaintiff and Lamm were duly notified of the filing of this report as required by section 896, Revised Statutes, 1879.

The railway company deposited the $500 with the clerk as required by statute. Sanders then moved the court to order the clerk to pay this money to him, supporting his motion by an affidavit that he and not Thompson was entitled to it. A copy of this motion and affidavit was served on Lamm and Thompson, and they failing to appear the court in due time made an order for the clerk to pay the money to Sanders, which was done.

On June 3, 1887, said railway company instituted proceedings in said court to condemn said lots 18 and 19 for its right of way and depot grounds, making Duggan and wife, who were then residents of Iowa, and plaintiff and said Lamm parties. A summons similar in form and substance to the one in the other case was issued and served on plaintiff and Lamm on the fourth day of June, 1887, the return day being June 15. On the ninth day of June, 1887, the court made an order of publication as to Duggan and wife, which was published notifying them that the petition, the substance of which was recited therein, would be heard on the first day of July, 1887, and on that day, no one appearing, the judge appointed commissioners, who afterwards reported in due form, assessing the damages at $950, which amount the railway company paid to the clerk of the court as required by law. Plaintiff and the other parties were duly notified of the filing of this report, and, no exceptions being taken, the report was, by said court, confirmed.

The record fails to show who got this $950, or whether anyone has received it. The railway company took possession of these three lots, tore down some buildings on them, and has used them ever since for depot and right-of-way purposes.

Plaintiff foreclosed the deed of trust in 1888, and bought the lots, taking a deed from the trustee to himself, and brought this suit to recover damages for the destruction of the buildings on the property and for possession. The defendant set up the condemnation proceedings above mentioned as a defense. The court gave judgment for the defendant, and the plaintiff appealed.

The only question presented by this record for decision is, whether the condemnation proceedings were void, and, therefore, subject to collateral attack in this action. The irregularities in these proceedings, which it is claimed render the attempted condemnation void, will be considered in their order.

I. Condemnation proceedings are in the nature of proceedings *in rem* in the same sense that attachments, foreclosure of mortgages and other liens are proceedings *in rem*. The statute requires notice to be given the owners of the land to be affected, and it must be given in conformity to the statute.

The exercise of the right of eminent domain is in derogation of common law and common right, and the utmost strictness is required to give it validity. "The law abhors all *ex parte* proceedings without notice. To take a man's property without notice of it is repugnant to every principle of justice, and such a proceeding is utterly void." This doctrine is too well settled to require citation of authorities to support it.

Circuit courts, in condemnation proceedings, however, act from their inception judicially, though in conformity to statutory powers. That the court had

jurisdiction of the subject-matter of these condemnation proceedings, is not questioned. The petitions upon which those proceedings were based set out specifically the interest plaintiff had in the premises sought to be condemned and every other fact necessary to give the court power to act.

But plaintiff contends that in those proceedings the court did not by proper process acquire jurisdiction over his person, and for that reason the proceedings are void as to him. Article 6 of chapter 21, Revised Statutes, 1879, makes provision for the condemnation of land for right of way and depots for railways. By that article two notices to those whose property is to be condemned are required. In the first place upon filing the petition, either in term time or vacation, a summons shall be issued giving the owners "at least ten days' notice of the time when said petition will be heard, which summons shall be served by the sheriff of the county in the same manner as writs of summons are or may be by law required to be served." R. S. 1879, sec. 894. Section 3489, Revised Statutes, 1879, provides "a summons shall be executed, except as otherwise provided by law * * *: *First,* by reading the writ to the defendant, and delivering to him a copy of the petition;" and if there are more than one defendant the first one served must receive a copy of the petition and the others copies of the summons.

Defendants' contention is that the service of the summons in the condemnation proceedings was defective and void, because copies of the petitions were not served on any one of the defendants. The precise question now presented has never been directly decided by this court so far as we have been able to discover. The case of *Cory v. Railroad*, 100 Mo. 282, is cited in support of the view that the service of a copy of the petition is not necessary. No copy of the petition was

served in that case, though that fact does not appear in the published report of it. The court, speaking of the notice and its service, uses this language: "It was in the form of a summons, and was served as the law aforesaid required, ten days before the petition was heard." We cannot regard this statement, in the connection in which it was made, as an authoritative construction of the statutes now under discussion. The question here presented was not raised in that case, and it cannot, therefore, be presumed that the court decided it or intended to decide it.

Taking the language of our statute literally it would seem that a copy of the petition ought to accompany and be served with the summons, but we do not believe that has been the understanding of the bench and bar of the state. The eminent counsel engaged in the *Cory case* did not raise nor discuss the point. The practice, so far as our information goes, has not been uniform. The statute of 1855 on this subject required in terms a copy of the petition to be served on the land-owner, and in the revision of 1865 it was put in the form it now has.

This change in the statute would indicate that the service of the summons alone would be sufficient, but we entertain doubts, after a most careful research and investigation, whether a copy of the petition ought not also to be served. Be that as it may, however, courts often acquire jurisdiction over the person though the service of the required notice is defective. Freeman on Judgments, sec. 126, and cases cited.

It is claimed that, as the plaintiff was not interested in any property in Livingston county, he might very well infer that the proceeding could not affect him. The notice was, however, that he should appear before the judge of the circuit court of *Carroll county*, and it was issued by the clerk of the circuit court of that

county, and, hence, he had notice that the interest to be affected was to be litigated in that county, though the initiatory steps were to be taken before the judge sitting in chambers in another county of the same circuit. And, besides that, the names of the owners of the equity of redemption in the same property on which he had a deed of trust were included in the same summons, copies of which were served on plaintiff, and this indicated to him, in a measure, what property was to be affected. Whether such a notice, if the statute requires a copy of the petition to be served, is sufficient to confer jurisdiction over the person, is also a doubtful question viewed in the light of the adjudged cases, some holding that a defective service of notice, where notice is actually given, confers jurisdiction whilst others hold that the slightest deviation from the required form of the notice or required mode of service vitiates it, and does not confer jurisdiction.

It seems to us that it is more in accord with modern jurisprudence to require a party to appear and object to the notice or its service where he has *actual* notice that some proceeding is to be had *at a designated time and place*, which may affect his interest, and, if he fails to do this, not to permit him to assail in a collateral proceeding rights acquired in good faith, on the supposition that the service of notice was regular. "A distinction is to be made between a case where there is *no* service whatever, and one which is simply *defective or irregular*. In the first case the court acquires no jurisdiction, and its judgment is void; in the other case, if the court to which the process is returnable . * * * renders judgment therein, such judgment is not void, but only subject to be set aside by the court which gave it, upon reasonable and proper application, or reversed upon appeal." *Isaacs v. Price,* 2 Dill. C. C. 351.

There is no pretense in this case that plaintiff did not know the object of the petitions that he was notified would be heard, nor that he was misled by any defect in the notice or its service. He now assails the judgments of condemnation of the lots, not on the ground that he did not know they were being condemned, but on the sole ground that the forms of the service of notice were not complied with.

The objection to the service of the notice applies to both condemnation proceedings, but it is claimed that in the proceeding for the condemnation of lots 18 and 19 there was another irregularity in this, that the notice to plaintiff set the hearing of the petition for the fifteenth day of June, whereas the judge did not act and did not appoint commissioners till the first day of July. The record fails to show that any action was taken on the return day of the notice, or that any adjourning order was made. The defendant did not appear on either day. We take it that the judge finding that Duggan and wife were non-residents of Missouri, and, therefore, had to be served by publication in a newspaper for three weeks, and that there was not time to make such publication for June 15, fixed in the order of publication July 1, as the day for the hearing of the petition. If plaintiff had appeared at the time and place fixed in the notice, and no action whatever had been taken, he would have been justified in assuming that the contemplated proceeding had been abandoned, and he could have gone about his business. But he did not appear. The hearing of the petition was to be in chambers, where no record is provided to be kept, and in the absence of any recital to the contrary we may very well presume that the judge did continue the hearing to July 1. *St. Louis v. Lanigan*, 97 Mo. 175. We cannot see how plaintiff was prejudiced by this, when it is conceded he did not appear at all at any

time or place, and, hence, this objection also is simply a technical one, and the action of the court in this regard could not and did not affect plaintiff's rights injuriously.

But this is not all. Upon the defect in the first notices alone the plaintiff bases his contention, that the court did not acquire jurisdiction of his person. He ignores altogether the second notice required by the statute, which was given in these condemnation proceedings. These notices informed him that the commissioners had made their report, assessing the damages sustained by the owners of the land taken, of whom plaintiff was one. No objection is made to these notices. The statute provides that the report of commissioners "may be reviewed by the court in which the proceedings are had on written exceptions filed by either party in the clerk's office within ten days after the service of the notice, and the court shall make such order therein as right and justice may require, and may order a new appraisement upon good cause shown. Such new appraisement shall, at the request of either party, be made by a jury under the supervision of the court as in ordinary cases of inquiry of damages." The plaintiff still failed to appear, and the reports of the commissioners in both cases were confirmed by the court.

Taking these notices in connection with the prior proceedings, we feel satisfied that the court acquired jurisdiction of plaintiff's person, to the extent, at least, that its proceedings cannot be attacked collaterally. The principle upon which courts act in permitting collateral attacks of judgments is, the parties affected did not have their day in court, and had no opportunity to be heard or to appeal. In the proceedings here involved, however, the plaintiff had his day in court, and had an opportunity to be heard upon every question

involved, and had the right to a writ of error or an appeal.

Our statute provides for two notices in the condemnation of land for public use. The first notice required is of the time when the petition will be heard. The main object of this notice, no doubt, is to give the land-owner an opportunity to be heard in regard to the appointment of the commissioners. This, we concede, is an important right and ought not to be overlooked in the determination of the question. These proceedings are ordinarily begun in vacation, and the petition in the first instance heard by the judge in chambers, and, hence, objections on other points cannot be so well entertained and disposed of as in term time. But when the report comes in, and notice of its filing has been given, the parties have ample opportunity to be heard upon every question affecting their substantial rights.

The constitution itself declares "whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public." Const., art. 2, sec. 20. And, again: "The right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain any incorporated company shall be interested either for or against the exercise of said right." Const., art. 12, sec. 4. These constitutional provisions clearly indicate that the proceeding to condemn private property for a public use is a judicial proceeding, and derives its validity mainly from the action had after it reaches the circuit court. This court has ruled that the proceeding is a judicial one (*Plum v. City of Kansas*, 101 Mo. 525), and this is the general

doctrine. Lewis on Eminent Domain, sec. 158. Plaintiff was notified of the filing of the reports of the commissioners, and thereupon he had ten days to file his written exceptions to them, and have the prior proceedings reviewed in detail. He could have raised the question of the sufficiency of the petition, and had it passed on by the court. Not having appeared before the judge in chambers on the appointment of the commissioners, he could have had the regularity of the summons and its service judicially determined. Any improper conduct of the commissioners or defect in their appointment, or any other illegality of procedure materially affecting the merits, would have been sufficient cause for setting aside the reports. Lewis on Eminent Domain, sec. 522; *Railroad v. Railroad*, 94 Mo. 535.

Hence, it seems clear to us, upon general principle, that the notice of the filing of the reports conferred jurisdiction upon the circuit court of Carroll county over the person of the plaintiff to proceed to condemn the property. But when the construction given by this court to the constitutional provisions above quoted is considered there is no room for doubt. By that construction the land-owner may, at his option, absolutely disregard all proceedings had up to the time he files his exceptions, by peremptorily demanding a jury to assess the damages for the property appropriated. Indeed, he can demand and obtain this right of trial by jury without filing any exceptions or giving any reason for it. *Railroad v. Story*, 96 Mo. 611; *Railroad v. Town-Site Co.*, 103 Mo. 451; *Railroad v. Shambaugh*, 17 S. W. Rep. 581; *Railroad v. Miller*, 17 S. W. Rep. 499.

In the case at bar there is no pretense that the court did not have jurisdiction of the *res*. All the necessary jurisdictional averments were made in the petition. That the use for which this property was sought to be taken was a public use, is beyond question.

The constitution of our state declares that railroads are public highways, and railroad companies common carriers, and, without any such provision in the organic law, the courts will take judicial notice that the taking of private property for the operation of a railway is for a use that is public.     Lewis on Eminent Domain, 170.

The railway company, therefore, had the absolute right by the express provisions of our constitution and laws to appropriate this property to its use, and the only question the land-owner could contest was the amount of compensation awarded him.     *Railroad v. Brick Co.*, 85 Mo. 307.     This contest, the notice of the filing of the reports gave him the opportunity to make, either by moving to set aside the reports and have a new commission, or by peremptorily demanding a jury. If the court, upon exceptions being filed, had refused to sustain them or had refused a jury on demand, or had granted a jury trial, the plaintiff could have had the action of the court reviewed on appeal or writ of error to the appropriate appellate tribunal.     *Railroad v. Railroad*, 94 Mo. 535.     Thus our laws gave this plaintiff the amplest opportunity to protect his interests and vindicate his rights, but he chose to stand by complacently and take no action.     He either believed the proceeding was so irregular that it would not bar his right, or else he was willing to leave it to the court to ascertain the compensation he was entitled to.     In the former case he knew, or thought he knew, that the railway company was making fatal mistakes, and permitted it to change thereby its relation to the property at great expense to itself.     The company paid $1,450 into court for the owners of these lots.     It took possession, tore down buildings and built its road for the use of the public.

Judge Scott in *Boonville v. Ormrod's Adm'r*, 26 Mo. 193, says: "Nothing would so much impair that just self-respect arising from the ownership of property, fairly acquired, as the reflection that it is subject to be defeated by others without notice to the possessor. The times require that courts should be zealous in carrying out that great aim of government—the defense of men and their children in the enjoyment of property acquired by their diligence, toil and labor. No man can cherish a warm affection for a government that suffers others, without notice and behind his back, to seize and appropriate his property on occasions justified by no emergency." While we most heartily indorse these eloquent words of one of Missouri's ablest jurists, we think we can, on the other hand, truthfully say that no man can cherish a warm affection for a government that will take property from him after he has paid for it and changed his relation to it by the expenditure of large sums of money upon it, and return it to the former owner, who had notice and ample opportunity to avoid such wrong, and wilfully failed to do it.

II. The objections made by plaintiff to the condemnation proceedings that the owners of other property were joined with plaintiff, when all parties thus joined did not reside in the same circuit, and that the orders of the judge made in chambers did not recite that the commissioners were disinterested, cannot be heard in this collateral proceeding, having determined, as we have, that the court had jurisdiction of the subject-matter and the persons of the land-owners. These are all matters of exception, and come too late now. *Railroad v. Kellogg*, 54 Mo. 334; *Railroad v. Carter*, 85 Mo. 448; *Evans v. Hoefner*, 29 Mo. 141; *Quayle v. Railroad*, 63 Mo. 465; *Kellogg v. Price*, 42 Ind. 360; *Huling v. Railroad*, 130 U. S. 559; Lewis on Eminent Domain, 601.

III.   Plaintiff's name and that of the trustee in the deed of trust were omitted from the judgments of the court confirming the reports of the commissioners, and this is assigned for error.   Upon examination of these judgments, we find that these reports were specifically referred to and were confirmed, and this being so we deem it unimportant that the names of the owners mentioned in the report should be given.   But such a defect could have been cured by amendment, and is cured by the statue of jeofails, the whole record showing who the [owners were.

IV.   In the proceeding to condemn lot 17 the commissioners assessed the damages at $500, and stated in their report that this  sum  was the damages B. F. Sanders, the owner of the equity of redemption, had sustained, without referring to plaintiff's interest, and this is assigned for error.   The proceedings show, however, that the damages awarded covered the full value of the whole lot.   This seems to be an appropriate, if not the proper, course  to pursue where an incumbrancer is made a party to a condemnation proceeding.   1 Jones on Mortgages [4 Ed.] sec. 681*a*; *Goodrich v. Board*, 45 Alb. Law Jour. (Kan.) Nov. 1891, p. 47.   The damages awarded to the owner stand instead of the land, and. can  be subjected to the payment of the incumbrance.   *Railroad v. Brown*, 12 L. R. A. 84, and notes.

"The burden of proof is on the mortgagee to show to what extent he has a claim upon the funds; and that question is then litigated between the parties in interest, and not at the cost of the taker of the land." 1 Jones on Mortgages [4 Ed.] sec. 681*a*.

"The land-owner is entitled to full damages, and the question as to the distribution of the money between the mortgagees is a question which does not concern the plaintiff." *Railroad v. Baker*, 102 Mo. 553.

But aside from this, Sanders filed his claim for the money of which claim plaintiff was duly notified, and still he failed to put in an appearance, and the court thereupon ordered the clerk to pay the money to the former. This the court had the power to do. *Hilton v. St. Louis*, 99 Mo. 207; *Railroad v. Baker, supra*. The plaintiff can certainly blame no one for the loss of this money except himself.

Viewing the whole record, it is seldom we meet with as much indifference to one's rights as plaintiff manifested in regard to this claim of his against the property condemned, and upon the whole we do not consider that it would be just or right to compel the railway company to vacate this property, after having paid for it once, and to stop the public commerce over its road by putting plaintiff in possession of the property. The judgment was for the right party, and it will be affirmed. All the judges concur.