Leonard v. Sparks.

LEONARD, *Plaintiff in Error*, v. SPARKS.

Division One, June 19, 1893.

1. **City**: STREET OPENING: CONDEMNATION PROCEEDING: NOTICE. In a condemnation proceeding defendant was personally served with process five days before the return day, but the law required "at least six days' notice." *Held*, that the judgment by default which followed was not void when attacked collaterally because of the shortness of the service.

2. **Justice's Judgment**: JURISDICTION: PRESUMPTION. Where facts touching acquisition of jurisdiction fully appear, judgments of justices of the peace are regarded no less favorably than those of courts having more extensive powers.

3. **Jurisdiction**. Jurisdiction of the subject-matter is the power to hear and determine cases of the class to which the proceeding in question belongs.

4. ———: STREET OPENING: COLLATERAL ATTACK. Where in a street opening case the record did not affirmatively show that the mayor's jury was composed of "disinterested freeholders" as the law required, *held*, that the omission did not invalidate the judgment on a collateral attack.

| | |
|---|---|
| 117 | 103 |
| 120 | 35 |
| 117 | 103 |
| 125 | 584 |
| 117 | 103 |
| 128 | 289 |
| 117 | 103 |
| 66a | 100 |
| 67a | 465 |
| 117 | 103 |
| 71a | 185 |
| d72a | 650 |
| 117 | 103 |
| 73a | 121 |
| 117 | 103 |
| 145 | 195 |
| 80a | 525 |
| 117 | 103 |
| d154 | 34 |
| 117 | 103 |
| 155 | 94 |
| 117 | 103 |
| 157 | 556 |
| 158 | 631 |
| 117 | 103 |
| 164 | 55 |
| 117 | 103 |
| 174 | ¹302 |
| 174 | ¹305 |
| 100a | ⁵161 |

5.. **Public Officer:** PRESUMPTION. In the absence of evidence to the contrary, the action of a sworn officer will be presumed to have been correctly taken.

6.. **Condemnation for Public Use:** SPECIAL STATUTORY PROCEEDING: COLLATERAL ATTACK. Missouri cases on the presumptions to be made touching the validity of special statutory proceedings reviewed; and *held,* that judicial proceedings to acquire land for public use, when questioned collaterally, are to receive the same presumptions of regularity ascribed by law to ordinary proceedings before the same courts or officers.

*Certified from Kansas City Court of Appeals.*

REVERSED AND REMANDED.

*Karnes, Holmes & Krauthoff* with *McDougal & Sebree* for plaintiff in error.

(1) The requirement of the city charter in question is that "service of the notice shall be made at least six days before the jury shall be impaneled." (Art. 7, Sec. 2.) Whether the service is had in time does not go to the jurisdiction. It is a mere matter of procedure, as to which error or irregularity may creep into the case, but the presence of such a circumstance would render the proceedings void nor subject to collateral attack. A defective service is not the same as no notice whatever. *Harrington v. Wofford,* 46 Miss. 31; *Mooney v. Maas,* 22 Iowa, 380; *Cole v. Butler,* 43 Me. 401, 403; *Kipp v. Fullerton,* 4 Minn. 473. (2) "A distinction is to be made between a case where there is no service whatever, and one which is simply defective or irregular." The fact of the latter does not deprive the court of jurisdiction. *Isaacs v. Price,* 2 Dillon C. C., 347; *Pursley v. Hays,* 22 Iowa, 11; *Meyers v. Davis,* 47 Iowa, 325; *Campbell v. Hays,* 41 Miss. 561; *Christian v. O'Neal,* 46 Miss. 667. "The

irregularity arises not from the want of service, but from the mode of making it." *Meyers v. Overton*, 2 Abb. Pr. 344; *Hunter v. Lester*, 18 How., Pr. 347. (2) The recitals to which the principal brief refers as conclusive of the matter of appearance are contained in the circuit court record. (Abstract p. 8.) The finding of proper service made by the mayor is not meant as the basis of the point. The recitals so referred to cannot be contradicted; nor was even the slighest effort made to deny their truth. The rules as to their conclusive effect self-evidently apply to cases where the service was made for too short a time. *Owen v. Shaw*, 20 Texas, 81; *Railroad Co. v. Keep*, 22 Ill. 9; *Lees v. Wetmore*, 58 Iowa, 170. (3) The admitted fact is that the mayor "duly impaneled a jury," which necessarily implies the jury prescribed by the charter. *State v. Keokuk*, 9 Iowa, 438. It is clear however that even if the jurors are not expressly recited to have actually possessed the charter qualifications, the fact did not oust all jurisdiction over the proceedings and render them a mere nullity. The point is not important here, for the further provision is that the cause "shall be tried *de novo* in the circuit court" (sec. 6), and on the trial thus had, a proper jury was admittedly impaneled and so the record explicitly recites. *Sedalia v. Railroad*, 17 Mo. App. 105; *Long v. Talley*, 91 Mo. 305. In such a case, any failure of the record in the mayor's court to recite the competency of the jurors would not oust the jurisdiction of the appellate court. *Sutherlin v. Holmes*, 78 Mo. 399; Mills Eminent Domain, sec. 251.

*D. D. Duggins* for defendant in error.

(1) Edward H. Bouton was entitled to six days' notice. He only had five. The record shows this; the petition states it, and the same is taken as true. This

notice is entirely insufficient. Laws 1875, sec. 2, page 245, line 19. The charter of Kansas City, under which these proceedings were had, is contained in session acts of Missouri 1875, page 196, *et seq.* (2) In proceedings to open streets, a person whose property is assessed with benefits is to be served with notice in the same manner that a person whose property is condemned is required to be served. *State v. St. Louis*, 67 Mo. 113; *Ells v. Railroad*, 51 Mo. 200. (3) A person not served with process or notice of a proceeding to condemn his land is not bound thereby. *State v. St. Louis*, 1 Mo. App. 503; *Moses v. Dock Co.*, 84 Mo. 245. (4) The want of notice and the failure to impanel the proper jury are both jurisdictional questions, and can be raised at any time, by any person to the proceedings. *Railroad v. Campbell*, 62 Mo. 585; *Hansberger v. Railroad*, 43 Mo. 196; *France v. Evans*, 90 Mo. 74. (5) In proceedings of this nature, in derogation of common law and right, the utmost strictness is required in order to give them validity, and unless it appear upon the face of the proceedings that every essential prerequisite of the statute conferring the authority has been fully complied with, every step will be *coram non judice*. *Ells v. Railroad*, 51 Mo. 200; *Cunningham v. Railroad*, 61 Mo. 33; *Anderson v. Pemberton*, 89 Mo. 61; *Bleze v. Costelio*, 8 Mo. App. 290. (6) Notice of proceedings to take property for public use, when required to be given, is the foundation of the right to proceed; and if such notice be not given or if not given in the way prescribed, the proceedings are void. *Baltimore v. Bouldin*, 23 Md. 328; *Darlington v. Com.*, 41 Pa. St. 68; *Horbeck v. Toledo*, 11 Ohio St. 219; *Nichols v. Bridgeport*, 23 Conn., 189; *Goudy v. Hall*, 30 Ill. 109; *Wort v. Finley*, 8 Blackf. (Ind.) 335; *Downs v. Fuller*, 2 Metc. (Mass.) 135; *Outhwite v. Porter*, 13 Mich. 533. (7) The judgment rendered without notice is void. *Anderson v. Brown*,

9 Mo. 640; *Roach v. Burnes*, 33 Mo. 319; *Railroad v. Reynolds*, 89 Mo. 146. And advantage may be taken of such judgment in a collateral proceeding. *Abbott v. Shepperd*, 44 Mo. 273; *Higgins v. Piltzer*, 49 Mo. 152; *Fithian v. Monks*, 43 Mo. 502; *Ferguson v. Crawford*, 70 N. Y. Ct. App. 253; *France v. Evans*, 90 Mo. 74; *Daughtery v. Brown*, 91 Mo. 26, 30.

BARCLAY, J.—October 5, 1887, defendant sold to plaintiff a piece of land in Kansas City, Missouri, by deed of general warranty with covenants implied by the words "grant, bargain and sell." Revised Statutes 1879, sec. 675; Revised Statutes 1889, sec. 2402.

The present action is based on those covenants, to recover of defendant the amount of certain special taxes paid by plaintiff in 1888, to relieve the land of the lien imposed thereby.

These special taxes were for "benefits" assessed against the property in a proceeding to open a street in Kansas City.

The only issue in the case is that of the validity of the special taxes. Defendant claims that the proceedings in which they were levied are wholly void as to Mr. Bouton, who then was the owner of the land, and to whom defendant was successor in title. That claim was submitted to the circuit court upon a stipulation in the nature of an agreed case, the essential features of which will appear. The court found for defendant, and the plaintiff took the ruling to the Kansas City court of appeals for review. The judges of that court did not agree in their conclusions upon it, and certified the case to the supreme court in accordance with the constitutional directions on that subject. Constitutional amendment 1884, sec. 6.

The condemnation proceedings in question were founded upon the Kansas City charter of 1875 (Sess.

Laws 1875, p. 196, and following). Two main objections are urged against them, it being conceded that in other respects they were regular throughout.

1. It is said that the assessment of benefits is void because the owner of this property was served with process five days before the day named for his appearance, while the charter required "at least six days" notice. Session Acts, 1875, sec. 2, p. 245.

The proceedings were taken under an ordinance of the city of Kansas, January 18, 1887, to open Elma street, and followed the usual course; first, before the mayor, and, later, in the circuit court, upon an appeal thereto by one of the other parties. Mr. Bouton did not at any time appear in the case in response to his notice. Finally a judgment was rendered, confirming the verdict of a jury which had assessed damages in favor of the parties whose land was acquired for public use, and various items for "benefits" against property in the vicinity, including that of Mr. Bouton.

From the most casual glance at the record, it appears that the proceeding was one of a class which the mayor and circuit court had power to hear and determine. It was a case involving the use of that judicial power committed by law to those functionaries. They had jurisdiction of its subject-matter, according to the principles declared in many decisions. *Walker v. Likens* (1857), 24 Mo. 298; *Patten v. Weightman* (1873), 51 Mo. 432; *Hagerman v. Sutton* (1887), 91 Mo. 531.

But was complete jurisdiction obtained over Mr. Bouton? The latter personally received an official command to appear in the condemnation case before the mayor at a time named. The notice itself was valid and regular, in the prescribed statutory form, and duly served on Mr. Bouton within the territorial jurisdiction of the mayor. Mr. Bouton was entitled

by law to six days' notice; but the mayor would have had jurisdiction over him if he had appeared without any notice, as he might have done. So, also, might he have objected to the shortness of the service and have asserted his right to the full six days' notice by moving at the proper time to make that objection. But he did not see fit to do so. He was as competent to waive the full length of time of service as he was to appear without any notice whatever. The personal service of the process of the court brought the judicial power of the latter to bear upon him. He had his "day" to object to the process, if he did not deem it sufficient because not timely, or for any other reason; but he did not avail himself of that opportunity. He certainly could not, by ignoring the command of the writ, deprive the court of authority to determine as to the sufficiency of its service. It was for the court, not the party, to decide whether or not it was sufficient. It held it to be good, and rendered judgment accordingly. In contemplation of law, Mr. Bouton was before the court, for he had been personally summoned to appear there, and might have done so. If the call for his appearance was too sudden, the court's ruling that it was adequate may be error, which could have been rectified by seasonable and direct moves for that purpose, but such error could not defeat the court's jurisdiction to render a judgment conclusive upon him, or subject that judgment to successful attack collaterally.

A broad distinction is to be drawn between cases where no service on defendant appears and those in which service is shown, but where it is in some respect deficient or irregular. In the latter cases, jurisdiction attaches, subject to be defeated by objections to the irregularity, interposed in season in some direct man-

ner. In the former class, jurisdiction is not obtained, if the law requires service.

Where the facts touching the acquisition of jurisdiction are fully disclosed, the principles of law governing liability to collateral attack are applied no less favorably to judgments of justices of the peace than to the adjudications of courts having more extensive powers.

We conclude therefore that, on principle, the shortness of the service on Mr. Bouton furnishes no substantial ground, in the present action, to deny effectiveness to the judgment in the condemnation case.

We have so far treated the question as an original one; but there are expressions of opinion upon it, in adjudged cases in this state, which should be noted.

In *Perryman v. State to use Relfe* (1843), 8 Mo. 208, the court was called on to decide upon the validity of a justice's judgment by default, where the return showed merely that the summons had been served "by acknowledgment." The judgment was held good, against collateral assault, the court observing: "If the defendant had no notice of the proceedings against him before the justice of the peace, the judgments were clearly void. But if notice was actually given, and the return of the constable established that fact, though the return might not be in conformity to the statute, the principle would not apply. The party might have set aside the return in the justice's court, or, upon appeal, have reversed the judgment, but the judgment cannot be questioned in a collateral proceeding."

That decision was followed in *Jeffries v. Wright* (1873), 51 Mo. 215, in which an entry, in the justice's transcript, that the summons had been returned, "as served," was held to sufficiently establish jurisdiction acquired over defendant personally.

A similar ruling had already been rendered on a justice's judgment in *Norton v. Quimby* (1870), 45 Mo. 391, where the language in regard to the service was, "returned executed as the law directs," and in *Wilson v. Jackson* (1847), 10 Mo. 329, the same conclusion was announced in respect of a judgment of a "Superior Court" in Virginia, based on a return of the summons, "executed."

In *Crowley v. Wallace* (1848), 12 Mo. 143, the return of a constable failed to show that the service of summons upon defendant (in a justice's court) was made in the proper township to confer jurisdiction; but the court held that, though the return might have been quashed for insufficiency, the judgment was not void in a collateral suit.

The same conclusion was reached, touching the purport of a like return upon the process of a county court in Virginia, questioned collaterally in this state. *State to use v. Williamson* (1874), 57 Mo. 198.

*Sims v. Gray* (1877), 66 Mo. 616, decided that a judgment of the probate court, prematurely entered, was not void, the court saying that "a judgment rendered after notice, but sooner than it should have been rendered, according to the rules of law or the practice of the court, is simply an irregular judgment."

The same view has been taken of judgments prematurely given by the circuit courts. *Branstetter v. Rives* (1864), 34 Mo. 318; *Bailey v. McGinniss* (1874), 57 Mo. 362.

In *Thompson v. Chicago, etc., Co.* (1892) 110 Mo. 147; 19 S. W. Rep. 77, the second division unanimously ruled that where the law required that service of process, in a condemnation case, should include the delivery to defendant of a copy of the petition, the failure to deliver the copy rendered the service and judgment irregular, but not void when collaterally

assailed.    To support that position Freeman on Judgments, section 126, was referred to in the divisional opinion.    In the passage thus approved we find the following:  "A service of process, defective in giving four days' notice when the law required five days' notice is, nevertheless, sufficient to support the judgment of a justice of the peace."

But there are decisions in Missouri having a decided tendency to the contrary of those already noticed.

In *Sanders v. Rains* (1847), 10 Mo. 770, a justice's summons, returnable within a shorter period than that fixed by law, was held to invalidate totally the judgment which followed it.    The decision itself appears to intimate a distinction between the effect of judgments resting on process void on its face for want of obedience to positive law, and that of judgments based on process, originally valid, but defectively or irregularly served, which later point is the subject of our present consideration.

Moreover, the conclusion there announced is partly placed on the ground that "the same principle which authorized a court to hold a writ of execution void, because it was made returnable in sixty instead of ninety days, must apply with much greater force to a summons."    That very ruling in regard to executions, was, indeed, shortly afterwards made by the same learned judge.    *Stevens v. Chouteau* (1848), 11 Mo. 382.    But since then it has been totally discarded in *Norton v. Quimby* (1870), 45 Mo. 388.

The case of *Beech v. Abbott* (1834), 6 Vt. 586, cited in *Sanders v. Rains*, goes no further than to hold that in the absence of any notice, a justice's judgment in an action of trover is void; a proposition undisputed; but in that same state it has been plainly ruled that "it was never supposed before, that, because

the proper time was not given to a defendant to prepare for trial, the whole proceedings were rendered utterly void." *Hammond v. Wilder* (1853), 25 Vt. 346.

Another precedent on which *Sanders v. Rains* rests is *Grummond v. Raymond* (1814), 1 Conn. 40, which can be best described, shortly, as holding precisely the contrary doctrine to that stated in the first point in the official syllabus to *Melcher v. Scruggs* (1880), 72 Mo. 406, since repeated in *State ex rel. v. Devitt* (1891), 107 Mo. 576.

It should be further borne in mind that the Sanders decision was pronounced by a divided court, Judges NAPTON and MCBRIDE uniting in it, Judge SCOTT dissenting. It does not deal with the facts now in judgment where the summons, as issued, was entirely regular, and the service personal, but without the full interval, before the appearance day, which the law afforded to defendant. We have so fully discussed that case, and now mention, another, *Williams v. Bower* (1858), 26 Mo. 601, merely because both are cited as the authoritative basis for the decision next mentioned.

In *Howard v. Clark* (1869), 43 Mo. 344, it was said that "a judgment by default, rendered upon service within the time the law prescribes, is invalid;" and that such a judgment could be questioned collaterally. The last two preceding cases were cited, without discussion, as furnishing full authority for that ruling.

How far the *Sanders decision* supports the proposition the reader of what has been above written may judge.

The other case, *Williams v. Bower*, was not a collateral attack on a judgment. It was a direct attack, by appeal, to which very different principles apply, as is well known. Futhermore, the most important proposition asserted in the case last mentioned,

has been since mutely, but none the less positively, abandoned in *Gant v. Chicago, etc., Co.* (1883), 79 Mo. 502, and *Witting v. St. Louis, etc., Co.* (1891), 101 Mo. 631, and other cases to the same point.

In *Frances v. Evans* (1886), 90 Mo. 74, the effect of a return of service within less than the required time before appearance, was considered with reference to a garnishment proceeding upon execution, the return in question having been made in the original case. The court quoted a passage from the opinion in *Howell v. Clark*, 43 Mo. 344, holding that the subject was settled by the *Sanders* and *Williams cases*. Nothing was said of the other Missouri decisions already noted, ruling that, where service appeared, jurisdiction of the person would be presumed in collateral proceedings, although conformity of that service to all the requirements of law was not affirmatively exhibited.

In this condition of the precedents in Missouri, we have felt at liberty to re-examine the subject and to declare the law as seemed in conformity with correct principles. In doing so, we find that the position we have taken has ample support in well-considered cases in other states, bearing upon the precise point of present controversy. *Ballinger v. Tarbell* (1864), 16 Iowa, 401; *McNeill v. Hallmark* (1866), 28 Tex 157; *Glover v. Holman* (1871), 3 Heisk. 519; *Nelson v. Becker* (1875), 14 Kan. 509; *Betts v. Baxter* (1880), 58 Miss. 334; *Bowman v. Railroad* (1882), 102 Ill. 472; *Jackson v. State* (1885), 104 Ind. 516.

2. It is next insisted that the judgment of condemnation is void because the record does not disclose that the mayor's jury (which assessed "benefits") was composed of "disinterested freeholders of the city," as the charter required. (Session Acts, 1875, p. 234, sec. 1.) The record does not show the contrary; but it is silent on that point. The material question then is,

should the proceedings be presumed regular in this particular or be presumed void for want of the showing mentioned.

The course of procedure, prescribed by the charter of Kansas City, to subject lands to public use for street purposes, is judicial in its nature. It permits a trial by jury, after due notice. The mayor is invested with "the power of a circuit court for conducting such proceedings," enforcing process, passing on evidence, instructing the jury, etc.; and, after verdict before the mayor, an appeal may be taken, by any one aggrieved, to the circuit court where the cause is triable anew.

In such a proceeding every party interested has a full opportunity to be heard, and to have his rights protected by the law, administered by its sworn officers. It differs essentially from some modes of procedure for exerting the power of eminent domain (shown in certain of the older precedents), in which the taking of title was effected summarily and *ex parte*, leaving the land owner to pursue his damages by slow marches through the courts, later.

However, the proceeding now in question is special in its character, and it is statutory; but do those characteristics impair its force as a judicial function, or justify the application to it of different presumptions from those applied generally to ordinary legal proceedings?

Unfortunately on this question the decisions of Missouri are not in harmony.

It has been held in several cases (and remarked unnecessarily in others) that unless, upon the face of the record, every step requisite to the final exercise of jurisdiction, in such cases as this, affirmatively appear, the judgment reached is to be regarded as wholly void even in a collateral action, and although the statutory

proceeding may have been had in a court of "superior" jurisdiction.

On the other hand, from an early date, the supreme court in another line of decisions has applied to many special statutory proceedings, where the record was silent, the same presumption of correct action accorded to the doings of "superior" courts generally.

Thus in *State ex rel. v. Weatherly* (1869), 45 Mo. 17, a statutory proceeding in the county court, to incorporate a town, was held not vulnerable to attack by *quo warranto* where the petition, on which the county court had acted, failed to show the signatures of two-thirds of the taxable inhabitants of the proposed town, which the law required. The supreme court on that point ruled that the county court "had jurisdiction of the subject, and the propriety and regularity of its action is to be presumed until the contrary appears."

Substantially the same principle was declared in *State v. Evans* (1884), 83 Mo. 319, with reference to the action of a county court in granting a dramshop license; and in *State ex rel. v. Young* (1884), 84 Mo. 90, in regard to the action of school directors upon petitions for an election to change school districts.

In several cases (of which *Jones v. Driskill* (1887), 94 Mo. 190, may be mentioned as a type), it has been held that statutory actions to enforce the state's lien for taxes come within reach of the favorable presumptions allowed to ordinary judgments; and that rule now prevails in regard to special proceedings, in probate courts, for the sale of land of decedents to pay debts *(Johnson v. Beazley* (1877), 65 Mo. 250), and to proceedings in those courts to enforce specific performance of contracts on bonds for title. *Williams v. Mitchell* (1892), 112 Mo. 300; 20 S. W. Rep. 649.

A number of similar rulings have been made at various times in the history of the court in proceedings

under the road laws, where mere silence of the record (as to certain steps required by statute to be taken) was held not to impair the validity of the judgments when challenged collaterally.   *Wyatt v. Thomas* (1859), 29 Mo. 23; *Snoddy v. Pettis County* (1870), 45 Mo. 361; *Lingo v. Burford* (1892), 112 Mo. 149; 20 S. W. Rep. 459.

It has been very recently declared with reference to a street opening proceeding that an assessment of damages in a lump sum to several land-owners, instead of a separate amount to each, would not render the judgment void when collaterally called in question, as in the case at bar.   *Union Depot Co. v. Frederick* (1893), 117 Mo. 138; 21 S. W. Rep. 1118.

All these cases present instances of the exercise of statutory jurisdiction entirely out of the course of common law procedure. The deduction from them, and especially from those determined by the court *in banc* within the past year, is that proceedings of a judicial nature, to acquire land for public use, when collaterally attacked, are to be viewed and construed with the benefit of the same presumptions of validity and regularity, ascribed by law to other proceedings before the same courts or officers.   *Bowman v. Railroad* (1882), 102 Ill. 472; *Tucker v. Sellers* (1891), 130 Ind. 514.

Where an interested party resists such proceedings in the first instance, by direct methods, the courts, undoubtedly, will insist on an observance of every substantial requirement of law before divestiture of private title; but in a collateral assault the rule is as above stated.   Under that rule the fact that the record before us does not affirmatively recite the qualifications of the mayor's jury is immaterial.   It was directly so decided in *Porter v. Purdy* (1864), 29 N. Y. 106, a case which was followed as authority in *Lingo v. Burford*

(1892), 112 Mo. 149, and in *Union Depot Co. v. Frederick* (1893), 117 Mo. 138; 21 S. W. Rep. 1121.

In the absence of any showing to the contrary it will be presumed that the mayor's action was correctly taken and that he complied with the requirements of law in selecting the jury.

This result we believe accords with sound principle, as well as with the weight of authority. *Keyes v. Tait* (1865), 19 Iowa, 123; *Railroad v. Griesser* (1892, Kan.), 29 Pac. Rep. 1082; *Coal Co. v. Railroad* (1892, Ind.) 29 N. E. Rep. 566.

It follows that the objections urged to the judgment in the condemnation case are untenable. The learned trial judge erred in ruling otherwise. Accordingly the cause is remanded to the Kansas City court of appeals with directions to reverse the circuit court judgment and to remand with an order for the entry of judgment for plaintiff in accord with this opinion. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.