# CHARLESTON

POCAHONTAS WHOLESALE GROCERY CO. v. GILLESPIE *et al.*

Submitted January 28, 1908.    Decided February 18, 1908.

1. ATTACHMENT—*Return of Officer—Effect—Levy.*

The officer's return upon an attachment is competent and legal evidence to show proper service thereof and that the property attached is such as may be legally seized under the writ, and conclusive evidence that everything has been done necessary to constitute a valid levy.   (p. 580.)

2. JUSTICE OF THE PEACE—*Jurisdiction.*

The giving of separate checks at different times by one merchant to another, aggregating an amount in excess of the jurisdiction of a justice, is not alone sufficient to show they were given for the same demand, so as to defeat his jurisdiction of separate actions thereon.   (p. 581.)

3. SAME—*Continuance.*

Where, after several continuances by agreement of the parties, there being no appearance by either party at the time to which the last continuance was thus made, the justice of his own motion continues the case from week to week for an aggregate period of more than three months before final judgment, such action, if neither party is present insisting on his rights under sections 59–63, chapter 50, Code, amounts to a mere irregularity, not to a discontinuance of the case or an ouster of jurisdiction.   (p. 581.)

4. SAME—*Judgment.*

Where jurisdiction by a justice has once been gained, it will not be lost by such subsequent irregularity; and his judgment can not, on that ground, be collaterally attacked.   (p. .585)

5. JUDGMENT—*Collateral Attack—Irregularities—Stipulations.*

Conditional and uncertain agreements between counsel for the parties respecting dismissal of a suit begun will not be enforced so as to avoid a judgment subsequently recovered and involved in a collateral proceeding.   (p. 585.)

Appeal from Circuit Court, McDowell County.

Bill by the Pocahontas Wholesale Grocery Company and others against J. A. Gillespie and others.   Decree for plaintiffs, and defendant the Flat Top Grocery Company appeals.

*Reversed in part, and remanded.*

J. R. DILLARD, for appellant.

D. J. F. STROTHER and D. E. FRENCH, for appellees.

MILLER, JUDGE:

In a suit of creditors for appointment of a receiver and winding up the business of the copartnership of Gillespie, Hash & Company, by a convention of creditors and distribution of the proceeds of sale of the social assets, the appellant, the Flat Top Grocery Company, appeared before the commissioner to whom the cause was referred to take the account, and offered in evidence the record of two judgments recovered before a justice, upon attachments sued out in the same actions and levied upon "the entire stock of general merchandise in the store-room and ware-room of the store" of said firm, which the return of the officer thereon showed he had taken into his possession prior to the appointment of the special receiver sought, the appellant claiming by virtue thereof liens in priority to those of the other creditors. The commissioner allowed the judgments as general debts against the social assets, but denied them priority; and his report, upon exceptions thereto by the Flat Top Grocery Company, was confirmed by the court in its final decree appealed from.

The grounds on which the commissioner based his action, and relied on here to support it, are: First, want of identification of the goods attached with those taken in charge by the special receiver; second, the commissioner's inability to determine whether the two several checks upon which the judgments were rendered were given in payment for the same demand or separate demands—if the former the justice was without jurisdiction of the split-up claim; third, that in his opinion the justice rendering the judgments lost jurisdiction to render the same by continuing the cases on his own motion from February 21st to July 18th, a period of about five months, by virtue of sections 59-61, chapter 50, Code; fourth, that in the opinion of the commissioner the evidence before him established an agreement between D. E. French, the attorney representing the other creditors, and J. R. Dillard, the appellant's attorney, that said attachment suits should be withdrawn and all creditors join in the application for a receiver.

The only evidence before the commissioner on which he could have based the first of these grounds consisted of the certified transcripts from the docket of the justice who rendered said judgments, and the order of the court appointing the special receiver, which order directed him to take possession of "the general stock of merchandise, including fixtures, furniture, etc., in the store and ware-rooms of the defendants." This order, so far as it relates to the stock of merchandise, it will be seen, describes the same substantially in the language of the officer in his levy thereon endorsed on said attachments. The settlement of the special receiver's accounts before said commissioner showed cash from sales at retail $566.40, from sale of the remainder of stock $3,150.00, and from accounts collected to date $67.50 —showing that the greater portion of the money· in hand for distribution was realized from sales of the stock of merchandise. "The officer's return is always competent and legitimate evidence to show proper service, and that the property attached was such as might be legally seized under a writ **; and it is conclusive evidence that everything has been done necessary to constitute a valid attachment." 1 Shinn on Att. & Gar. 722. We think the levy in this case sufficiently identifies the goods levied on as those subsequently taken into possession of and sold by the special receiver. *Prima facie* it must be so; and, as· the record of the justice was received in evidence for that purpose without objection, and no evidence offered to show the contrary, the commissioner was not justified in denying· the priority of the attachments for the first ground assigned.

The second ground, relating to the two checks, likewise stands unsupported by the evidence. It was not sufficient justification for denying priority to the judgments, that the commissioner was unable to determine whether the two checks upon which said judgments were severally founded were given in payment of the same demand or separate demands. He says the presumption, drawn from facts assumed but not in evidence, is that they were given for the same demand. The presumption is directly the contrary, and in favor of the verity and regularity of the record and judgment of the justice, sufficient appearing to show juris-

diction of the subject matter and of the parties, and the amount claimed in the summons and not the amount shown in the testimony is controlling. *Junkins* v. *Lumber Co.*, 44 W. Va. 642. The dates of the checks, noted on the docket as having been offered in evidence, are not given, but the numbers are shown to have been respectively 107 and 313; so that, if given on the same bank, considerable time evidently elapsed between the dates on which they were issued. If given in settlement of the same demand, why separate checks and at different times? It is true that the plaintiff may not split up a demand greater than the jurisdictional amount of the justice, and the defendant be vexed with several suits instead of one. *Bodley* v. *Archibald*, 33 W. Va. 229; *Hale* v. *Weston*, 40 W. Va. 313. But, as was said in *Wells* v. *Insurance Co.*, 41 W. Va. 136, the defendant has nothing to complain of if sued for less than he is liable for, as appears in reference to the suit here on check number 313 for $359.92. Assuming as we must that the checks sued on were separate demands, the holder had a perfect right to maintain separate actions on them. *Bank* v. *Wood*, 60 W. Va. 619. In *Kyle* v. *Railroad Co.*, 49 W. Va. 296, it was held that, the summons showing jurisdiction and the plaintiff not being entitled to recover more than demanded by it, the action could not be dismissed for want of jurisdiction because the bill of particulars and proof showed an attempt to recover an amount beyond the jurisdiction of the justice; and that the plaintiff in such case may at any time before verdict withdraw any item of his demand, so as to reduce his recovery to an amount within the jurisdiction of the justice.

The third ground, based on alleged loss of jurisdiction by continuance, is equally untenable. The docket of the justice in each case shows that suit was begun and attachment sued out February 1, 1905, summons returnable February 7th; that the summons was returned duly executed on J. A. Gillespie and V. Hash, and that the attachment was executed by levy on the property of the defendants as already shown; that on the return day the parties appeared by counsel, and by agreement the case was continued to February 14th, when by like agreement it was further continued to February 21st; that on the latter day, neither of the parties appearing, the

justice continued the case to February 28th.   From the last day; according to the docket entry, neither of the parties appearing, the justice continued the case *from week to week* until July 18th, at which time the docket shows the plaintiff appeared by attorney, and after waiting one hour the defendant came not, and the plaintiff by attorney filed defendant's check in proof of his claim—in one case number 313 for $359.92, on which judgment was rendered in favor of plaintiff for $300 with interest and costs, and in the other case number 107 for $260.06, on which judgment was rendered in favor of the plaintiff for $274.20 with interest and costs; and in each case the attachment was sustained as properly sued out.

. The argument based on these records is that, when on February 21st the parties failed to appear, the extent of the jurisdiction of the justice was to dismiss the actions, and failing in which they stood dismissed by operation of law; and moreover that, as the aggregate of the weekly continuances from February 21st to July 18th, without the apparent consent of the parties and of his own motion, exceeded the period of three months, the justice thereby lost jurisdiction to render judgment.   The only authority cited in support of this position is Works on Courts & Their Jurisdiction 148, which simply holds, in accordance with many others and with numerous adjudged cases, that any affirmative action contrary to positive law, including an unauthorized continuance, will discontinue the case, and render subsequent judgment void or voidable.   See 4 Enc. Pl. & Pr. 892, 896;  24 Cyc. 488, 576, and notes;  *Thomasson* v. *Simmons,* 57 W. Va. 576, 578.   The positive provisions of our law which it is contended were violated by the record of the justice, amounting to discontinuance and ouster of jurisdiction, are the following provisions of chapter 50 of the Code:

"59.   On the return day of the summons, if the defendant be not in custody, the justice may without the consent of either party continue the cause for not over seven days; but he shall not exercise this privilege at any other time unless in case of sickess or necessity. * * *.

"60.   When a defendant is not in custody, the justice on the return day or any subsequent time appointed for the hearing may continue the cause on application of either party,

without the consent of the other, on the applicant showing, by his oath or otherwise, that he can not safely proceed to trial for want of some material paper, evidence or witness, and that he has used reasonable diligence to procure the same and will probably be able to do so if time is granted. The continuance shall, in such case, be for a reasonable time, to enable the applicant to obtain the paper, evidence or witness referred to.

"61. *But, unless both parties consent, no continuance shall be granted to a time beyond three months after the return of the summons served.*"

"63. If the cause be not continued the trial shall take place on the return day of the summons, if the same has been served, or at the same time set for trial when the last previous continuance was made."

"66. Saving the right of a defendant, who has filed a set-off or counter claim, to proceed to trial, though the plaintiff fail to appear, or dismiss his action, judgment may be rendered against the plaintiff dismissing his action, with cost, but without prejudice to a new action for the same cause, in the following cases: First, if he fail to appear and prosecute his action within one hour after the time for appearance mentioned in the summons, or last order of continuance; second, if he fail to make or file his complaint at or before the time the summons is returnable; third, if he fail or refuse to testify when properly required to do so; fourth, if he fail to give security for cost when properly required to do so; fifth, if the summons be defective or erroneous and can not properly be amended; sixth, if the plaintiff himself dismiss his action. But in the first, second and third class of cases the plaintiff may show cause, if he can, why his action ought not to be dismissed. The action shall also be dismissed at plaintiff's cost, whenever it shall appear that it has been brought in the wrong county, or that for any other reason the justice has not jurisdiction thereof."

The main reliance, however, is upon the provisions of section 61, it being argued that the continuances by the justice on his own motion after February 21st, the aggregate of which to July 18th exceeded three months, brings the case within the inhibition of that section, and that thereby the

justice lost jurisdiction to render the judgments. But it is also argued that, under the provisions of section 63, the trial should have taken place on February 21, the time set when the last previous continuance was had by agreement, or, in default of appearance by the plaintiff at that time, his action should have been dismissed under the first sub-division of section 66; that the word "may", used in the latter section, means "shall", regardless of whether or not the defendant was present insisting upon his rights.

As we view the provisions of sections 59-63, they relate particularly to proceedings where the parties are present demanding their rights under them, and not to action of the justice in the absence of either party: hence by section 61, unless both parties consent, no continuance shall be granted to a time beyond three months after the return of the summons served. This means a *single* continuance; it does not mean that, after the sum of all continuances shall exceed the period of three months, they shall operate as a discontinuance and an ouster of jurisdiction. A similar statute was so construed in *Bryant* v. *Pember*, 43 Vt. 599. It is not contended there was any lack of authority or irregularity in the proceedings down to February 21st. After that neither party appeared, and the justice of his own motion continued the cases. If the defendants had appeared and insisted upon their right of trial or nonsuit, the justice would have been bound to observe the provisions of the statute referred to. Without appearance, the subsequent continuance we think amounted to nothing more than a mere irregularity, not to a discontinuance or ouster of jurisdiction. In *Hard* v. *Shipman*, 6 Barb. 621, it is held that, if an inferior court acquires jurisdiction but errs in exercising it, its proceedings are not void but voidable only; that they will protect the magistrate, parties and officer, and are valid and binding until reversed on *certiorari* or appeal, and can not be collaterally assailed; that, where jurisdiction has been once gained, it can not be lost by a subsequent irregularity, and every intendment will be made in favor of the regularity of the subsequent proceedings; that, having acquired jurisdiction, the justice there did not lose it by erroneously adjourning the cause contrary to the agreement of the parties, and that his judgment subsequently rendered was valid until re-

versed on *certiorari*. In our own case of *Thomasson* v. *Simmons, supra*, JUDGE BRANNON says, while conceding the force of the authorities there referred to, that any affirmative action by the justice contrary to positive law will work a discontinuance of the case, yet it is there said, in reference to the suit, that "it is in being until ended by express dismissal or final judgment." The provisions of section 66 also contemplate, we think, the presence of the defendant, saving his right where he has filed a set-off or counter claim. If the plaintiff fail to appear and prosecute his action within one hour, etc., the justice, if the defendant is present demanding it, must undoubtedly dismiss the plaintiff's action without prejudice, and then the word "may" in that section, as construed by this Court in *Buena Vista Freestone Co.* v. *Parrish*, 34 W. Va. 652, means "shall." In that case at page 656 JUDGE BRANNON says: "I think the word 'may', in the statute, is, as to both parties, to be read as if it were 'shall'. In other words, if the defendant demand a dismissal, the justice must enter it; and in such case he can do no more than dismiss it; it is the plaintiff's right that he shall do no more. *** This construction applies the practice of nonsuit in justices' courts as it is applied in circuit courts, and gives a defendant in the justices' courts as full right as in the circuit court." But if the defendant be not present and insist upon such nonsuit, it can not be said that the justice who continues the case and does not put the plaintiff out of court has discontinued the case and worked an ouster of jurisdiction. Nothing more could be said of his action than that it was irregular. The justice therefore having jurisdiction of the subject matter and of the parties, his judgment can not be collaterally attacked. *Fishburne* v. *Baldwin*, 46 W. Va. 19; *Newlon* v. *Wade*, 43 W. Va. 283; *Shank* v. *Ravenswood*, 43 W. Va. 242; *Cecil* v. *Clarke*, 44 W. Va. 659; *Adams* v. *Jennings*, 103 Va. 579; *Turner* v. *Conkey*, 132 Ind. 248; *Leonard* v. *Sparks*, 117 Mo. 103. In the last case cited, point two adjudicated is: "If the facts touching the acquisition of jurisdiction are fully disclosed, judgments of justices of the peace, so far as collateral attack is concerned, are regarded no less favorably than those of courts having more extensive powers."

The fourth ground, relating to the alleged agreement be-

tween counsel, we think is not supported by the evidence. The only evidence relied upon to support the agreement consists of the deposition of D. · E. French, the attorney representing the other creditors, a letter from him to J. R. Dillard, the attorney representing the appellant, of February 14, 1905, and Dillard's reply of February 16, 1905. This evidence shows an agreement between French and Dillard prior to the appointment of the receiver that Dillard would recommend to his client withdrawal of the attachments, but that he could not say positively what it would do until he had submitted the subject to it. Not hearing from Dillard, French says he called him by telephone and inquired what he would do in regard to the proposition, when Dillard replied it was all right and asked him if he had not received a letter. But Dillard's letter, evidently received after the conversation over the telephone, simply says: "I am sure you will have no trouble about the attachments under our agreement." The only agreement referred to, however, was the agreement that Dillard would see his client and submit the proposition of dismissing the attachments. There is no evidence that Dillard's client ever consented to the arrangement; and, the agreement not being positive and binding upon the appellant, for want of consummation, we think the judgments can not be impeached in this way. Parties who make such agreements should see to it that they are fully consummated. In this case counsel for the parties affected should have seen to it that the suits were actually dismissed by the justice. Courts can not consummate for the parties such indefinite and uncertain arrangements.

Counsel for appellant in his brief suggests that the court below in its decree appealed from erroneously preferred the claims of the clerks of the defendant firm. As the whole record respecting that subject is not brought here for review, we are unable to determine whether or not the decree is correct in this particular. We do not, however, understand that counsel seriously presents the subject, and the decree in that respect will not be disturbed.

For the reasons given, so much of the decree appealed from as, by overruling the exceptions of appellant to the report of the commissioner, disallowed the priority of the attach-

ment liens of the appellant upon the funds arising from sale of the stock of goods of the defendants, is reversed and annulled, and in all other respects it is affirmed; and this cause is remanded to the circuit court for reformation of said decree in accordance herewith, and to be therein further proceeded with according to the principles announced and directions given herein and according to the principles governing courts of equity.

*Reversed in part, and Remanded.*